JOHN T. GORMAN
Federal Public Defender
District of Guam

KIM SAVO
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
GLEN TAISACAN QUITUGUA



FILED
DISTRICT COURT OF GUAM
JUL 26 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 05-00025 |
| ) | |
| Plaintiff, ) | DEFENDANT'S POSITION RE |
| ) | SENTENCING; EXHIBITS |
| vs. ) | |
| ) | |
| GLEN TAISACAN QUITUGUA, ) | |
| ) | |
| Defendant. ) | |

Defendant, GLEN TAISACAN QUITUGUA, by and through counsel, Kim Savo,

Assistant Federal Public Defender, respectfully requests this Court to sentence him to a time-

served sentence.

**ORIGINAL**

## I. INTRODUCTION

Glenn Quitugua is a recovering methamphetamine addict. PSR at ¶ 26, 58. The current offense is the direct result of his drug use. Mr. Quitugua was a passenger in a vehicle that was stopped for a traffic violation on June 11, 2004. PSR at ¶ 10. As a result of the traffic stop, police officers found methamphetamine and the firearm that is the subject of this prosecution. Mr. Quitugua immediately admitted that he was using "Ice." PSR at ¶ 12-14. Mr. Quitugua came into possession of the firearm through his cousin, who asked him to buy the gun because he needed money to pay bills. PSR at ¶ 15. Mr. Quitugua was staying with his aunt at the time of the incident. He brought the gun with him in the car because he knew that his aunt was on probation and did not want to violate the conditions of her supervision. PSR at ¶ 16, 25.

Unsurprisingly, Mr. Quitugua's addiction has had a destructive impact on his life. His relationship with his common-law wife has ended. *See* Quitugua Letter, attached as Exhibit A. His efforts to improve his life by joining the U.S. Army Reserve failed as a result of his drug use. He has alienated himself from his children. *See* Photographs, Exhibit B.

Judy Munier, Mr. Quitugua's cousin, and her husband, Robert, have offered to have Mr. Quitugua come to live with them when he is released from custody. Robert is the manager of an apartment complex, and has plans to employ Mr. Quitugua as a maintenance worker. The Muniers believe that with their support, Mr. Quitugua can remain drug free. Mr. Quitugua would like to stay here on Guam with them.

Mr. Quitugua has a very minimal criminal history, and he successfully completed his prior term of probation. Mr. Quitugua has been in custody since he was arrested on that day in

2

June 2004. At the time of sentencing he will have been in custody for just over a year. PSR at ¶ 7. Given the length of his incarceration, his limited criminal history, and his addiction, Mr. Quitugua respectfully requests that the Court sentence him to time-served.

## II. DISCUSSION

The Supreme Court has ruled that the mandatory nature of the federal sentencing guidelines runs afoul of the Sixth Amendment. *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, the sentencing guidelines are "effectively advisory." *Id.* at 757. Courts are now required to consider the guidelines as only one among the other statutory purposes of sentencing in arriving at the appropriate sentence.[1] *Id.* The guidelines are neither the starting point of the court's considerations, nor are they to be weighed more heavily than the other statutory purposes. As the Ninth Circuit has stated the advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence . . . ."

---

[1] "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis., Jan. 19, 2005), *citing United States v. Wilson*, 350 F. Supp. 2d 910, 912 (D. Utah, Jan. 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. *See United States v. Issa M. Jaber*, 362 F. Supp. 2d 365, 371 (D. Mass, Mar. 16, 2005) ("*Wilson* method comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*"); *see also United States v. Myers*, 353 F. Supp. 2d 1026, 1028 (S.D. Iowa, Jan. 26, 2005) (Pratt, J.) (agreeing with *Ranum* approach and arguing that the *Wilson* approach is in error because it makes the guidelines, "in effect, still mandatory"); *United States v. West*, 2005 WL 180930 (S.D.N.Y. Jan 27, 2005) (following *Ranum*).

3

*United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005), *reh'g en banc*, 409 F.3d 1073. These "statutory purposes," including the guidelines, are enumerated at 18 U.S.C. §§ 3553(a), 3582(a), and 3661.

The overriding principle and basic mandate of Section 3353(a) requires district courts to impose a sentence "sufficient but not greater than necessary" to comply with the four purposes of sentencing: retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment), deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

In arriving at the appropriate sentence, section 3553(a) directs the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender,[2] (2) the kinds of sentences available, (3) the guidelines and policy statements issued by the Sentencing Commission, (4) the need to avoid unwarranted sentencing disparity, and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute nor *Booker* suggest that any single factor is to be given more weight than any other factor. There is no authority in the Ninth Circuit directing district courts to give more weight to the guidelines than to the other statutory factors.

---

[2] Under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. *Id.*

4

Section 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment).

Finally, section 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing and appropriate sentence." 18 U.S.C. § 3661. In sum, in every case, courts must now consider all of the statutory factors, not just the guidelines in arriving at the appropriate sentence.

### A. The Sentencing Factors Weigh in Favor of a Time-Served Sentence.

The instant offense is a status crime. Mr. Quitugua was a drug addict in possession of a firearm when he was a passenger in a vehicle that was stopped for a traffic violation. He had no intention of using the firearm, and planned to sell it back to his cousin. While he demonstrated very poor judgment when he agreed to purchase the gun, Mr. Quitugua had the gun with him when the car was stopped because he was trying to prevent his aunt from getting into trouble.

The advisory guideline range in this case is 10-16 months. A time-served sentence is consistent with this range.

Mr. Quitugua has gone a long way toward punishing himself by damaging or destroying his relationships with the people whom he loves most in the world. Mr. Quitugua needs drug treatment not more incarceration. He has been without drugs for a little over a year, but will need

5

counseling and support to remain drug free in the community. Luckily for Mr. Quitugua, family members have come forward to offer him a home and employment upon release. By enacting section 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a). The most effective deterrent of any future criminal conduct by Mr. Quitugua is to ensure that he does not use drugs again.

## III. CONCLUSION

Based on the foregoing, Mr. Quitugua respectfully requests the Court to sentence him to time-served.

DATED: Mongmong, Guam, July 25, 2005.

_____
KIM SAVO
Attorney for Defendant
GLENN TAISACAN QUITUGUA

6

Dear Your Honor,

I am writing to you in hope and despair. I first want to apologize to you and to the people of Guam for my wrongdoings and stupidity.

I came to Guam with no bad intentions, but only to visit the few Aunt's and cousins known to me. I admit guilt to my criminal actions and stupid choices which has led me to my incarceration since June 11, 2004. For this I'm sorry Your Honor. I am not a criminal in nature Your Honor, I'm a God fearing good person who was once lost in the addictive world of a drug called "ICE". Being incarcerated this past year has made me realize the extensive damage I've caused to myself and most especially those dearest to me, my children, by taking this drug. I've failed my children in their expectations of me as a father. I've lost my 8 year relationship with my common-law wife, the mother of my youngest son. I've lost a great many things throughout the years of my using Ice and I've regret using this drug so much it sickens me. I'm begging for your clemency Your Honor of my situation. I'm pleading to you Your Honor, that if you can find leniency in your Heart to please forgive me for my actions. I've suffered the consequences of my actions since day 1 of my incarceration and I'm still suffering now. Most especially the memorable occassions that has past during my incarceration. It hurts very much having to call all (3) three of my children during their birthdays, knowing that I should be there next to them. I've suffered these pains mentally and emotionally on every day of my life here in prison and I pray that one day these pains will ease. I talk to my children every chance I have, especially my three year old son. I miss them so much.

continue →

If I could change all the wrongs that I've done in the past, I would do anything to do so. Your Honor. What's done is done and I only look forward to bettering my life not only for my sake, but for the benefit of my kids. I've prayed and hoped that it's not too late. My life is in your hands now, Your Honor. Please Help Me.

Sincerely,
Glenn .T. Quitugua.

Thank You. Your Honor.





## CERTIFICATE OF SERVICE

I, ALEXANDER A. MODABER, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on July 26, 2005:

RUSSELL C. STODDARD
First Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam  96910

Attorney for Plaintiff
UNITED STATES OF AMERICA


CARLEEN BORJA
U.S. Probation Officer
U.S. Probation Office
Districts of Guam and NMI
2nd Floor, U.S. District Court

DATED: Mongmong, Guam, July 26, 2005.

_____
ALEXANDER A. MODABER
Investigator

KIM SAVO
Attorney for Defendant
GLEN TAISACAN QUITUGUA